# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| ASSOCIATION FOR ACCESSIBLE MEDICINES,<br><br>    Plaintiff,<br><br>v.<br><br>BRIAN E. FROSH,<br>*in his official capacity as Attorney General of Maryland*, and<br>ROBERT R. NEALL,<br>*in his official capacity as Secretary of the Maryland Department of Health*,<br><br>    Defendants. | Civil Action No. TDC-17-1860 |

## MEMORANDUM OPINION

Pending before the Court is the Motion for Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988 ("§ 1988") filed by Plaintiff Association for Accessible Medicines ("AAM"). Pursuant to the Court's prior order, the Motion is limited to the question of whether AAM is entitled to attorney's fees and does not address the amount of attorney's fees that may be due. Having reviewed the briefs and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

In 2017, the Maryland General Assembly enacted a law targeting price gouging in the generic prescription drug market. 2017 Md. Laws 4556 (codified at Md. Code Ann., Health-General §§ 2-801–2-803 (LexisNexis 2019)). This law prohibits drug manufacturers or wholesale distributors from introducing any generic drug price increase that (1) is "excessive and not justified

by the cost of producing the drug or the cost of appropriate expansion of access to the drug to promote public health," and (2) "[r]esults in consumers for whom the drug has been prescribed having no meaningful choice about whether to purchase the drug at an excessive price because of (i) [t]he importance of the drug to their health; and (ii) [i]nsufficient competition in the market for the drug." Md. Code. Ann., Health-Gen. §§ 2-801(c), (f), 2-802(a) (LexisNexis 2019). Each violation of this prohibition may be punished by a civil penalty of up to $10,000. *Id.* § 2-803(d)(5).

On July 6, 2017, AAM, "a voluntary organization with a membership that consists of prescription drug manufacturers and wholesale distributors and other entities in the pharmaceutical industry," filed suit in this Court to challenge the law pursuant to 42 U.S.C. § 1983. *Ass'n for Accessible Medicines v. Frosh* ("*AAM*"), 887 F.3d 664, 667 (4th Cir. 2018). That same day, AAM filed a Motion for a Preliminary Injunction to prevent the enforcement of the law against itself and its members. AAM argued that the law regulated conduct occurring outside Maryland and so violated the dormant Commerce Clause of the United States Constitution, and that the law was void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution. The Attorney General of Maryland and the Secretary of the Maryland Department of Health, Defendants in this case, filed a Motion to Dismiss both counts. The Court (Garbis, J.) denied the Motion to Dismiss as to the due process count but granted it as to the dormant Commerce Clause count. It also denied the Motion for a Preliminary Injunction. The Court subsequently entered partial final judgment in favor of Defendants on the dormant Commerce Clause count pursuant to Federal Rule of Civil Procedure 54(b).

On appeal, the United States Court of Appeals for the Fourth Circuit reversed, holding that the law "violates the dormant commerce clause because it directly regulates the price of transactions that occur outside Maryland." *AAM*, 887 F.3d at 666. Defendants sought rehearing

*en banc*, but the Fourth Circuit declined. *Ass'n for Accessible Medicines v. Frosh*, 742 F. App'x 720, 721 (4th Cir. 2018). The United States Supreme Court denied Defendants' petition for a writ of certiorari. *Frosh v. Ass'n for Accessible Medicines*, 139 S. Ct. 1168 (2019). After remand, at the direction of the Fourth Circuit, this Court entered final judgment in favor of AAM and permanently enjoined Defendants from implementing the law as applied to transactions occurring outside Maryland.

AAM then sought leave to file a motion seeking attorney's fees. The Court granted leave but limited the proposed motion to the question of liability. AAM then filed the instant Motion for Attorney's Fees.

## DISCUSSION

AAM argues that it is entitled to attorney's fees under the plain language of 42 U.S.C. § 1988, which provides for attorney's fees for the prevailing party in a civil rights action filed pursuant to 42 U.S.C. § 1983, because it prevailed in this litigation and there are no special circumstances justifying an exercise of the Court's discretion to deny it attorney's fees. Defendants do not contest that AAM was the prevailing party for purposes of § 1988. Instead, they argue that there are special circumstances warranting a denial of attorney's fees, specifically, that an award of attorney's fees to an industry group like AAM in a case that succeeded in striking down a law regulating that industry would not further the purposes of § 1988, and because granting attorney's fees would raise federalism concerns by deterring other states from exercising their regulatory authority.

### I. Legal Standard

In a civil action filed pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b)

(2018). Courts have interpreted this discretionary language to mean that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Such a presumption in favor of granting attorney's fees serves the purpose of § 1988 "to ensure effective access to the judicial process for persons with civil rights grievances." *Id.*

The special circumstances exception is a "very narrowly limited" one. *Doe v. Bd. of Educ. of Balt. Cty.*, 165 F.3d 260, 264 (4th Cir. 1998) (citations omitted); *cf. N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980) (holding, in a Title VII case, that "a court's discretion to deny a fee award to a prevailing plaintiff is narrow"). "Only on rare occasions does a case present such circumstances." *Doe*, 165 F.3d at 264; *see Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014) (holding that "special circumstances should not easily be found"). Courts have noted that special circumstances may exist where "a postjudgment motion [for attorney's fees] unfairly surprises or prejudices the affected party," *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 454 (1982); where a self-represented plaintiff who is an attorney seeks attorney's fees, *Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991); where "the plaintiffs' suit did not vindicate civil rights" because the harm was remedied before the lawsuit was filed, *Lefemine v. Wideman*, 758 F.3d 551, 556 (4th Cir. 2014) (citing *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir. 1976)); where the prevailing party has already received attorney's fees in the litigation, *Little Rock Sch. Dist. v. Ark. State Bd. of Educ.*, 928 F.2d 248, 949-50 (8th Cir. 1991); and where a case "involved no broad civil rights issues," and the plaintiff failed to secure an award of compensatory damages and "received only nominal damages," *Carter v. Burch*, 34 F.3d 257, 265-66 (4th Cir. 1994).

The losing party bears the burden of demonstrating that special circumstances exist. *Hescott*, 757 F.3d at 523. While meeting this burden does not require the non-prevailing party to

identify a case precisely on point, *see Doe*, 165 F.3d at 264, the party must nevertheless make a "strong showing" to justify a finding of special circumstances, *Hescott*, 757 F.3d at 523 (citation omitted).

## II. Attorney's Fees

As noted, Defendants have effectively conceded that AAM is a prevailing plaintiff for purposes of § 1988. Where this Court entered both final judgment in favor of AAM and a permanent injunction against Defendants, the Court finds that AAM is such a prevailing party. *See Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam) ("[W]e have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party] test."). Thus, the only remaining question on the Motion is whether any "special circumstances" exist that would "render . . . an award unjust." *Hensley*, 461 U.S. at 429.

In seeking to make such a showing, Defendants attempt to reframe the Court's inquiry, arguing that, pursuant to a standard developed by the United States Court of Appeals for the Ninth Circuit, the Court "should consider '(1) whether allowing attorneys' fees would further the purpose of § 1988; and (2) whether the balance of the equities favors or disfavors the denial of fees.'" Opp'n Mot. Attorney's Fees at 13, ECF No. 98 (quoting *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1285 (9th Cir. 2004)). However, as AAM points out, the Fourth Circuit expressly declined to adopt this exact two-factor approach in a dispute over attorney's fees under the Individuals with Disabilities Education Act ("IDEA"), 28 U.S.C. §§ 1400–1482 (2018), finding that the approach "contains no real standards and provides no legitimate reason for departing from the usual rule of awarding reasonable fees to prevailing plaintiffs under fee-shifting statutes." *Doe*, 165 F.3d at 264 n.2. Significantly, in *Doe*, the Fourth Circuit stated that "Congress intended courts to interpret [the IDEA] as they have § 1988." *Id.* at 264. The Court is therefore effectively

precluded from utilizing this two-factor approach in a motion for attorney's fees under § 1988. *See id.*; *Combs ex rel. Combs v. School Bd. of Rockingham Cty.*, 15 F.3d 357, 360 (4th Cir. 1994) (holding that cases interpreting the attorney's fee provisions of the IDEA and § 1988 "apply the same principles to determine a plaintiff's entitlement to attorneys' fees").

Nevertheless, the Court may still consider Defendants' substantive arguments relating to the purpose of § 1988 and assess whether they establish special circumstances that would warrant a denial of attorney's fees. In *Doe*, the Fourth Circuit in fact relied on an argument relating to the purpose of the statute in concluding that special circumstances barred an award of attorney's fees under the IDEA. There, an attorney had successfully represented his son in an IDEA proceeding, but the court balked at granting the parent-attorney any attorney's fees because doing so "might well lessen the chance that a disabled child would have the benefit of legal services from an independent third party," which would undermine the fee-shifting provision's purpose of "encourag[ing] effective prosecution of meritorious claims." *Doe*, 165 F.3d at 263-65.

Defendants similarly argue that special circumstances exist because granting AAM's Motion will not further the purposes of § 1988. Section 1988, they argue, was intended "to ensure effective access to the judicial process for victims of civil rights violations." Opp'n Mot. Attorney's Fees at 14. In this case, they contend, granting attorney's fees would do nothing to ensure effective access to the judicial process because "lawsuits like this one—brought pursuant to the dormant Commerce Clause to impose restrictions on state regulatory authority, and generating substantial economic benefits to the commercial actors who succeed in enforcing those restrictions—will certainly be brought by business interests and trade groups without regard to the availability of fee-shifting in this case." *Id.* at 17. Based on a "forward-looking assessment of

whether an award of fees in this case would expand access to the courts in like cases in the future," Defendants argue that this Court should not grant attorney's fees to AAM. *Id.* at 16.

Whether or not this Court would otherwise find this argument sufficiently compelling to justify the denial of attorney's fees under § 1988, the Court concludes that it is effectively precluded from reaching such a conclusion by existing precedent in this circuit. First, the Fourth Circuit has held that the prevailing party's ability to pay attorney's fees without fee-shifting is not a special circumstance that would render an attorney's fee award unjust. *Bills v. Hodges*, 628 F.2d 844, 847 (4th Cir. 1980); *see also Venegas v. Mitchell*, 495 U.S. 82, 87-88 (1990) ("[F]ees may be awarded under § 1988 even to those plaintiffs who did not need them to maintain their litigation ... because they were fortunate enough to be able to retain counsel on a fee-paying basis."); *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1285 (9th Cir. 2004) ("People and entities whose civil rights have been unconstitutionally abridged are generally entitled to attorneys' fees under § 1988 regardless of their ability to pay their attorneys."); *Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954, 956 (5th Cir. 1981) ("[P]revailing plaintiffs' ability to pay is not a special circumstance rendering an award under § 1988 unjust.").

Second, the Fourth Circuit has declined to treat a plaintiff's financial incentive to bring a case as a special circumstance. *See Nat'l Home Equity Mort. Ass'n v. Face*, 283 F.3d 220, 226 (4th Cir. 2002) (affirming the district court's conclusion that the fact that a trade association of mortgage lenders had its own financial incentives to pursue a § 1983 claim to bar enforcement of statutes regulating prepayment penalties did not provide a special circumstance rendering an award of attorney's fees unjust), *vacated on other grounds* 537 U.S. 802 (2002), *readopted* 322 F.3d 802 (4th Cir. 2003) (per curiam); *see also Ackerley Communications, Inc. v. City of Salem*, 752 F.2d 1394, 1397 (9th Cir. 1985) ("Whether or not the action would have been brought in the absence of

Section 1988 is irrelevant."); *cf. Herrington v. Cty. of Sonoma*, 883 F.2d 739, 744 (9th Cir. 1989) (per curiam) (holding that the fact that the plaintiff was motivated by "an expectancy of personal financial gain" was not a special circumstance).

Considering these two lines of cases together, the Court concludes that Defendants' proposed "forward-looking" special circumstance—namely, that claims such as AAM's dormant Commerce Clause claim will be brought by business interests and trade groups regardless of the availability of fee-shifting—is effectively foreclosed. Arguing that attorney's fees are unnecessary in this type of case because parties and counsel will be incentivized by the potential "substantial economic benefits," Opp'n Mot. Attorney's Fees at 17, is just another way of saying that fees should not be available when the plaintiff has a financial incentive to bring the case. *See Nat'l Home Equity Mort. Ass'n*, 283 F.3d at 226. Moreover, relying on the fact that the parties bringing these cases will be "commercial actors," "business interests," and "trade groups" with the resources to obtain counsel, Opp'n Mot. Attorney's Fees at 17, is effectively another way to consider a party's ability to afford counsel to be a special circumstance, a position that the Fourth Circuit has explicitly rejected. *See Bills*, 628 F.2d at 847. The Court therefore concludes that the proposed special circumstances are effectively precluded by controlling authority.

Defendants' concerns about federalism also fail as a special circumstance. Granting attorney's fees in this case, Defendants argue, "would have the potential to chill state regulation in any area of the economy dominated by complex, interstate businesses." Opp'n Mot. Attorney's Fees at 18. Even if this Court were to find such an argument compelling, it cannot reasonably be squared with controlling precedent. First, the Supreme Court has explicitly held that as a general proposition, § 1988 makes attorney's fees "available in *any* § 1983 action." *Maine v. Thiboutot*, 448 U.S. 1, 9 (1980) (concluding that § 1988 attorney's fees are available in a § 1983 action

alleging a federal statutory violation). Second, the Supreme Court has held that dormant Commerce Clause claims are cognizable under 42 U.S.C. § 1983. *See Dennis v. Higgins*, 498 U.S. 439, 451 (1991). Considered together, these two cases effectively establish that attorney's fees are generally available in dormant Commerce Clause cases. *See BFI Medical Waste Sys. v. Whatcom Cty.*, 983 F.2d 911, 914 (9th Cir. 1993) ("Litigants who successfully bring suit under the Commerce Clause may recover . . . attorney's fees under § 1988."). Indeed, the Supreme Court was well aware of this consequence when it upheld the use of § 1983 to assert a dormant Commerce Claim in *Dennis*: Justice Kennedy's dissent in *Dennis* asserted that § 1983 should not be a vehicle through which to assert a dormant Commerce Clause claim because it would render attorney's fees available, through § 1988, to "major corporations and industry associations" and thus "shift[] the balance of power away from the States and toward interstate businesses." *Dennis*, 498 U.S. at 464 (Kennedy, J., dissenting). Justice Kennedy also warned that such an outcome would "risk destruction of state fiscal integrity." *Id.* Thus, the Supreme Court has effectively evaluated and rejected the argument that the use of § 1983 to assert a dormant Commerce Clause claim, and the provision of attorney's fees under § 1988 on such a claim, should not be permitted because it would harm state regulatory interests, advantage interstate businesses, and implicate federalism concerns.

Finally, the Court notes that Defendants' federalism argument, that the potential to face a substantial attorney's fee award could dissuade state government regulatory activity, would apply to all state regulation, not just those "area[s] of the economy dominated by complex, interstate businesses." Opp'n Mot. Attorney's Fees at 18. Yet the claim that attorney's fees should not be available in § 1983 cases challenging state regulatory activity cannot be readily reconciled with courts' consistent approval of § 1988 attorney's fees in cases challenging state laws or regulations. *See, e.g., Nat'l Home Equity Mort. Ass'n*, 283 F.3d at 222-23, 226 (affirming an attorney's fees

award in a case challenging a Virginia law regulating mortgage prepayment penalties); *Consumers Union of U.S., Inc. v. Va. State Bar*, 688 F.2d 218 (4th Cir. 1982) (finding that an award of attorney's fees against the Virginia Supreme Court and the Virginia State Bar was warranted in a case challenging the enforcement of a state professional responsibility code); *cf. Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 201 (4th Cir. 2019) (reversing a district court's denial of attorney's fees in a case challenging a state redistricting law). Accepting Defendants' argument would widen the special circumstances exception beyond its "narrowly circumscribed" limits. *See, e.g., Brandon*, 921 F.3d at 201 (reversing a determination that special circumstances rendered an attorney's fee award unjust where the district court had transgressed "its narrowly circumscribed discretion"). The Court declines to do so.

The Court therefore finds that in light of existing precedent, there are no special circumstances present that would make awarding attorney's fees unjust.

## CONCLUSION

For the foregoing reasons, AAM's Motion for Attorney's Fees is GRANTED. A separate Order shall issue.

Date: November 21, 2019

THEODORE D. CHUANG
United States District Judge